# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

**SHANNON L. PADGETT,**
                    **Plaintiff**

**v.**                                                    **Civil Action No.**
                                                          **3:04CV718-J**

**JO ANNE B. BARNHART, Commissioner**
 **Social Security Administration,**
                    **Defendant**

## MEMORANDUM OPINION

This case presents plaintiff Shannon L. Padgett's challenge to the decision of the Commissioner denying her claim to disability insurance benefits. After examining the materials of record, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the Commissioner should be affirmed.

The record includes two different full hearings and two different pre-hearing conferences (March 7, 2001, February 20, 2002, July 19, 2002, and September 12, 2002). After the last of these hearings, ALJ Schultz determined that Ms. Padgett's impairments prevented her from performing any of her past relevant work, but that she retained the residual functional capacity for a significant range of light work.

The disability determination process consists of five steps. Wyatt v. Secretary, 974 F.2d 680 (6th Cir. 1992). These steps are approached sequentially, and a finding at any step that is adverse to the claimant terminates the process:

   1. The claimant must not be engaged in substantial gainful activity.

2. The alleged disabling impairment must be "severe," meaning that it significantly limits the individual's ability to do basic work activities necessary for most jobs, such as walking, standing, sitting, lifting, seeing, hearing and speaking.  20 CFR Section 416.921.

3. If the claimant has a medical condition that meets or exceeds the impairments listed in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the Listings"), the evaluation terminates and the claimant is conclusively presumed to be disabled. Lankford v. Sullivan, 942 F.2d 301 (6th Cir. 1991).

4. The claimant must be unable to do his or her past relevant work.

5. If the claimant shows inability to do the past relevant work, the Commissioner must come forward with evidence to show that the claimant can still perform a significant number of jobs. Born v. Secretary, 923 F.2d 1168 (6th Cir. 1990).

If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm.  Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991).   The Court's obligation to affirm in such a case exists regardless of whether we would resolve the disputed issues of fact differently, and regardless of whether there exists substantial evidence to support the opposite conclusion.  Stanley v. Secretary, 39 F.3d 115 (6th Cir. 1994),  Tyra v. Secretary, 896 F.2d 1024 (6th Cir. 1990), Mullen v Brown, 800 F.2d 535, 545 (6th Cir. 1986).

The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have

supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6 th Cir.1986). Significantly, under this standard, this Court is not to resolve conflicts in evidence and may not decide questions of credibility. See Garner v. Heckler, 745 F.2d 383, 387-88 (6th Cir.1984).

Ms. Padgett's first contention on this appeal is that the ALJ erred in his treatment of the previous Veterans Administration finding of 100% disability. She recognizes that 20 CFR Sec. 404.1504 provides that a determination made by another agency is not binding on the Commissioner, but she argues that the ALJ should have accorded "considerable weight" to that prior determination. While there are Circuits which have authority regarding the necessity of specifically addressing other agency determinations, ours is not among them. See, e.g., Loza v. Apfel, 219 F.3d 378 (5th Cir. 2000) (other determinations "persuasive" but not determinative) and Baca v. Department of Health & Human Servs., 5 F.3d 476, 480 (10th Cir.1993) (findings by other agencies are entitled to weight and must be considered, but are not binding on the Commissioner).

Both ALJ opinions noted the Veterans Administration disability award. More importantly, the factual discussion in the April 2001 opinion (adopted by the October 2002 opinion) discussed specific medical information that underlay the VA award. The "percentage of disability" approach used by the VA is obviously different from the standards applicable to a Social Security proceeding and the different rules and mechanisms make it inappropriate to simply treat the award as showing disability for Social Security purposes. The Court is of the opinion that there was no error in the ALJ's handling of the prior award.

Ms. Padgett contends that the ALJ failed to accord the proper weight to the treating and examining physicians. She is concerned that the ALJ relied on the opinion of the non-treating

3

and non-examining medical advisor, a person who did not see Ms. Padgett testify. However, the medical advisor testified solely with regard to the implications of the written record and the extent to which the consulting psychologist's conclusions were supported by the evidence on which he purportedly relied. Such a process does not constitute legal error.

Plaintiff offered the opinion of consulting psychologist James Moneypenny, who evaluated Ms. Padgett in December of 2000. He described Ms. Padgett's ability to deal with the public, to deal with work stresses, and to maintain attention/concentration as "poor or none." Tr. 563. Dr. Moneypenny had a similarly pessimistic view of Ms. Padgett's ability to understand, remember and carry out complex or detailed instructions, relate predictably in social situations, and demonstrate reliability. Tr. 564. The testifying vocational expert stated that such restrictions would preclude all employment. Tr. 228-229.

The ALJ rejected the opinion of Dr. Moneypenny, pointing to the fact that the restrictions were based on Ms. Padgett's subjective reports of pain. This reasoning is sound: It is the ALJ's responsibility to evaluate the credibility of reports of subjective symptoms. To the extent that Dr. Moneypenny's opinion is based on simply taking those reports at face value, they are of greatly diminished value in the overall decision. Additionally, the ALJ observed that Ms. Padgett takes no medication for depression or anxiety. Finally, the ALJ cited the statements of testifying psychologist O'Koon that the objective results of the MMPI and the information Dr. Moneypenny recorded regarding his interview did not support Dr. Moneypenny's assessment. Tr. 25. The April 2001 opinion also noted that when claimant underwent an evaluation in April of 1998 as part of the Veterans proceeding, she described her depression as mild. Tr. 47. These represent adequate reasons for declining to accept the opinion of the examining consultant.

Ms. Padgett next contends that the ALJ failed to properly evaluate her fibromyalgia. In ALJ Schultz's October 2002 opinion is a footnote referring to the Department of Veterans Affairs decision, which in turn referred (without date or physician) to a physical examination that showed no trigger points.[1] Tr. 259. However, it is apparent that ALJ Schultz did not rely on that second-hand "no trigger point tenderness" report, because he *did* find that Ms. Padgett suffered from fibromyalgia, and trigger point reactivity is essential to such a finding. Tr. 24.

Thus, having found the existence of a condition that can produce pain, the fundamental question is whether the ALJ properly evaluated the evidence as to restrictions imposed on Ms. Padgett by her pain. While pain may support a claim of disability, the claimant's subjective assertions are not sufficient. 20 C.F.R. Sec. 404.1529(a), King v. Heckler, 742 F.2d 968, 974 (6th Cir. 1984). The ALJ may consider muscle spasms, atrophy, reflex abnormalities, neurological deficits, loss of sensation, household and social activities as well as the type of medication used to alleviate the pain. 20 C.F.R. 416.929©)(3); Jones v. Secretary, 945 F.2d 1365, 1370 (6th Cir. 1991); Blacha v. Secretary, 927 F.2d 228, 231 (6th Cir. 1990). A significant consideration in the evaluation of pain is the credibility of the claimant, given that tolerance of pain is very much an individual matter. Villareal v. Secretary, 818 F.2d 461, 463 (6th Cir. 1987). "Determination of credibility related to subjective complaints of pain rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant ... is invaluable and should not be discarded lightly." Gaffney v. Bowen, 825 F.2d 98, 101 (6th Cir. 1987).

Without regard to whether pain resulted from fibromyalgia or pain syndrome, the

---

[1] In contrast, Dr. Lipsmeyer's November 2, 2000 examination revealed 18 of 18 trigger points (Tr. 579).

5

analysis conducted by ALJ Scultz reflects that he considered the functional restrictions imposed on Ms. Padgett by her pain. He noted the absence of *any* treatment for pain or the prescription of medication for pain. Tr. 26. While he noted that Ms. Padgett does not "like to take medications," the Court is unaware of any authority suggesting that a person may be seen as unable to engage in gainful employment due to a personal preference for not taking medication. The ALJ described Ms. Padgett's report of daily activities, which included, inter alia, doing laundry, cooking, driving, etc. In light of the ALJ's identification of medical evidence, testimony regarding activities, and evidence of lack of treatment, the Court finds no error in his evaluation of the Ms. Padgett's subjective reports of pain.

Finally, Ms. Padgett contends that ALJ Schultz's October 2002 decision was based on essentially the same evidence as ALJ Mattingly's decision in April 2001, but found greater residual functional capacity. ALJ Mattingly found that Ms. Padgett should alternate sitting and standing every one to two hours, while ALJ Schultz found she should alternate every half hour. ALJ Mattingly found that Ms. Padgett could occasionally lift up to fifteen pounds, while ALJ Schultz found that she could occasionally lift up to twenty pounds. Tr. 29, 52. Although Ms. Padgett describes these differences as "significant," the Court disagrees. The important inquiry is the requirements of the jobs identified by the vocational expert. After eliciting testimony regarding the 14,667 regional jobs that could be done by someone who could lift twenty pounds occasionally and who had the other restrictions posited, the ALJ asked whether there would be jobs available if the hypothetical included the same sit-stand requirements, the same postural, environmental and mental limitations, but the individual was limited to work at the sedentary exertional level. The vocational expert testified that all of the same jobs would still be available

"with the exception of the file clerk as numbers are not available at the sedentary level." Tr. 226.  That is, not all of the 1644 file clerk positions would be eliminated, but the VE was not able to state exactly how many of those would still be available at the sedentary level.  Even excluding *all* file clerk positions, however, there would still be in excess of 4300 positions available regionally, and in excess of 233,000 positions available nationally.  The Court finds no error.

      An order in conformity has this day entered.